FILED

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

2013 MAR 15 P 12: 51

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

WALTER ACEVEDO

VS.                                                                     C.A. NO.:

BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., AS GRANTOR         **CA 13- 167**
THRUSTEE OF THE PROTIUM
MASTER GRANTOR TRUST, ALIAS,
BSI FINANCIAL SERVICES, INC., ALIAS,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, ALIAS,
AND JOHN DOE, ALIAS

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, AND INJUNCTIVE RELIEF

The Plaintiff, Walter Acevedo, by his Attorney, complains of Defendants as follows:

## COUNT I
## DECLARATORY JUDGMENT

1.      The Plaintiff, Walter Acevedo, is a resident of the State of Rhode Island with an address of 126 Murray Street, Providence, Rhode Island. The Plaintiff own said real estate located at 126 Murray Street, Providence, Rhode Island along with his wife and son.

2.      Defendant John Doe is any entity which has an interest in the Plaintiff's mortgage and/ or promissory note.

3.      Defendant Bank of New York Mellon Trust Company, NA, as Grantor Trustee of the Protium Master Grantor Trust ("Protium") claims to be the owner of Plaintiff's mortgage and note.

1

4. Defendant BSI Financial Servicers ("BSI") claims to be the current loan servicer for the Plaintiff's loan. It is a loan servicer. However, it is not a loan servicer for Protium.

5. New Century Mortgage Corporation ("New Century") was a bank which was the nominal originator of Plaintiff's loan. It was a Mortgage Company that filed bankruptcy on April 2, 2007.

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1332 (diversity jurisdiction) as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and because the Defendants are foreign entities with a principal residence outside of the State of Rhode Island.

7. The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

8. All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

9. This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

    a. The provisions of Declaratory Judgment Act 28 USC Sec. 2201 et seq., grant this Court jurisdiction over questions of law and equity. The Plaintiff is asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiff at 126 Murray Street, Providence, Rhode Island.

    b. The provisions of the Declaratory Judgment Act 28 USC Sec. 2201 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments, powers of attorneys, and deed. The Plaintiff asks that the alleged assignment of mortgage be declared invalid and that the Court decide that the mortgage and note are not owned by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

2

10.   Exhibit A is a copy of the mortgage executed by the Plaintiff to New Century.

11.   On about June 8, 2010, Defendants MERS, Protium, and BSI prepared a fraudulent purported assignment of mortgage and note from MERS as nominee for New Century and its assigns to Protium (See attached Exhibit B). However, none of the alleged assigns in the purported chain of title are or ever have been members of MERS. This fraudulent document was prepared and executed in order to create the false illusion that Protium owned the mortgage and note. The basis for this allegation of the creation of a fraudulent assignment is the following facts:

    a.   MERS never owned, possessed or held the note which remains payable to an unknown entity. The alleged assignment purports to convey the mortgage and the money due, which is an impossibility. By the terms of the mortgage and in his document referenced as an assignment, MERS claimed to be the owner of the mortgage and money due on June 8, 2010. MERS cannot in this matter by the terms of the mortgage and by its own rules, regulations and by-laws act on its own behalf. Thus the alleged assignment by MERS itself was not only a fraudulently created document, but was also void and a nullity. No consideration was paid by Protium to either MERS or New Century. MERS, Protium, and BSI were aware of this fact, yet allowed the fraudulent document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiff.

    b.   The person whose name was affixed to the alleged assignment was Monica Sawatsky, who is not and has never been an employee or validly authorized Assistant Vice President of MERS or New Century. She is and has been an employee of BSI. She has never been legally authorized to sign any document on behalf of MERS. She did not sign the alleged assignment of mortgage. She is a robosigner who works for BSI. Her name was signed by another BSI employee on this document which purports to be an assignment of mortgage. The Notary

3

Public Jill Johnson-Sheely, whose name is affixed to the public document, did not sign the document.

c. No corporate resolution has been made naming Monica Sawatsky as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. Monica Sawatsky was not authorized, pursuant to purported MERS regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer. A copy of the MERS regulations is attached as Exhibit C.

d. The By-Laws of the Corporation Mortgage Electronic Registration Systems, Inc. have never authorized the Assistant Secretary of MERS or any person to appoint any certifying authorizing officer. A copy of the By-Laws is attached as Exhibit D.

e. Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. It never appointed Monica Sawatsky as a MERS officer. It has never appointed any person as a MERS officer.

f. The original mortgage on this property was given to MERS as Nominee for New Century, which originally owned the note. MERS owned nothing to assign on June 8, 2010. Thus MERS, which never owned, possessed or held the note, did not have the authority or ability to assign it with the mortgage. In fact, MERS Officers and representatives have made judicial admissions that MERS never owns the notes and has never been entitled to payment in regards to any mortgage. This finding of fact was made by the Nebraska Supreme Court in the case of Mortgage Electronic Registration Systems, Inc. v.Nebraska Department of Banking and Finance, 704 N.W. 2d 784 (Nebraska, 2005). A copy of this case is attached as Exhibit E. There has been the following judicial admission by MERS in this case, which states:

> MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under

4

> § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."

MERS v. Nebraska Department of Banking, at p.787

g. There has been a finding as a matter of fact and law by the Nebraska Supreme Court that:

> MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

MERS v. Nebraska Department of Banking, at p. 788

h. MERS has made certain admissions in its Appellate Brief in MERS v. Nebraska Department of Banking, which is attached as Exhibit F:

   1. MERS does not take applications for, underwrite or negotiate mortgage loans;

   2. MERS does not service mortgage loans;

   3. MERS does not sell mortgage loans;

5

4. MERS is not an investor who acquires mortgage loans on the secondary market;

5. There is no rational basis for determining that MERS acquires loans;

6. MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents;

7. MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents;

8. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time;

9. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans;

10. MERS only acts when directed by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner;

11. MERS has no interest at all in the promissory note evidencing the mortgage loan;

12. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note;

13. MERS does not acquire any interest (legal or beneficial) in the loan instrument (i.e., the promissory note or other debt instrument).

14. The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.

15. MERS cannot be deemed to be acquiring mortgage loans because it does not obtain legal or beneficial title in loan instruments;

16. The beneficial note interests are transferred by endorsement and delivery of the note;

17. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint.

18. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit;

19. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties;

      20.    Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider;

    i.    The alleged assignment was designed to create the illusion of standing to allow Protium to claim nominal ownership of the loan even though the note and the mortgage were never sold to Protium by MERS or New Century. The Defendants needed to create a purported authorized party to sign the alleged assignment to allow Protium to seek to foreclose on the loan. Thus this fraudulent assignment, without basis or authorization, was created. MERS, Protium, and BSI were aware of all these facts at the time of the alleged assignment. They nevertheless had a BSI employee claim to sign a document which purported to assign the note and the mortgage, aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything to convey, transfer or assign to Protium on June 8, 2010.

    j.    No consideration was given to MERS in conjunction with the alleged assignment of the monies due and mortgage on June 10, 2010.

    k.    As a result of this void and unauthorized document purporting to be an assignment, the Defendants lacked any standing, are not the real party in interest and were not proper parties to foreclose or enforce the original mortgage or note.

12.    Monica Sawatsky is not and has never been an employee or validly authorized Vice President of MERS. She is and has been an employee of BSI. She has never been legally authorized to sign any document on behalf of MERS. Her purported signature appears regularly in the land evidence records of various cities and towns in Rhode Island and in the land evidence records of Massachusetts counties and throughout the United States as a robosigner for BSI. A robosigner is a person who allows his or her name to

be affixed on documents, which purport to convey interest in land, specifically a mortgage, with no authority to sign said documents. As a result an alleged mortgage assignment is not duly executed pursuant to the provisions of RIGL 34-11-24 and is void. This action, purportedly taken by Monica Sawatsky, was made in violation of RIGL 11-33-4 and is a crime specifically a misdemeanor. This statute provides as follows:

> **§ 11-33-4 False swearing pertaining to sale or conveyance of property.** – Every person over the age of eighteen (18) years who shall willfully swear or affirm falsely before any notary public, justice of the peace, or other officer authorized to administer oaths, concerning any material fact relating to any contract, lease, or other document pertaining to the sale or conveyance of real or personal property shall be deemed guilty of a misdemeanor and shall be fined not less than fifty dollars ($50.00) nor more than one hundred dollars ($100).

The false swearing of the alleged signer of the document purporting to be an assignment consisted of the following misstatements of fact:

    i. That she was an officer of MERS and had authority to sign on behalf of New Century;

    ii. That she possessed authority to sign on behalf of MERS;

    iii. That MERS conveyed the mortgage directly to Protium on June 8, 2010, along with the note;

    iv. That the document was signed by her in front of a notary public on June 8, 2010;

    v. That MERS owned the Note and the Mortgage on June 6, 2010;

    vi. That MERS received consideration on June 8, 2010;

a. There has never been a Corporate Resolution which authorized Monica Sawatsky to be a MERS officer on September 8, 2010.

b. The document referred to as an assignment allegedly signed by Monica Sawatsky was designed to create the illusion of standing to allow Protium to receive nominal ownership of the loan even though the Note and Mortgage were no longer owned by New Century or MERS. Defendant needed to create a purported authorized party to sign the alleged assignment to allow Protium to seek to foreclose on the loan. Thus this fraudulent and void assignment, without basis or authorization, was created.

c. Defendant Protium, as a securitized trust so called, is defined by the terms of its Grantor Trust Agreement and other documents associated with the loan securitization process. A copy is attached here as Exhibit G:

d. Pursuant to the Grantor Trust Agreement, transfers into the Trust were defined as follows:

From the Seller Protium Financial LP, a Cayman Islands limited partnership; from the Seller to the Depositor, Protium Management, LTD, a Cayman Islands limited partnership; and from the Depositor to the Trust of which BONY claims to be the Trustee. Each transfer was required to be a true sale for purposes of creating a bankruptcy remote structure and all the loans in the Trust were defined in the Grantor Trust Agreement defined as having been transferred in the Transaction Structure.

e. The Note and Mortgage were alleged to have been assigned or transferred on or about June 8, 2010. A copy of this assignment is attached as Exhibit B. Any assignment which would have been made on or about June 8, 2010 to Protium was outside the time defined by the Terms of the Grantor Trust Agreement and that the Defendant Trust was allowed to accept. The purported Assignment of Mortgage that was recorded was from

        MERS as nominee for New Century without being first transferred to the seller and then to the Depositor. As a result, not only were the note and mortgage allegedly transferred outside of the closing date, but were never transferred in the manner as defined by the Grantor Trust Agreement. The trust lacked the capacity to accept any loans from an entity other than the Depositor and did not receive loans from any other entity other than the Depositor. All transactions to the trust occurred on or before September 15, 2009. Thus this document was fraudulently created to make it appear that Protium actually owned the mortgage, even though the mortgage and note were never transferred to the Trust.

    f.    As a result of this void and unauthorized document purporting to be an assignment, the Defendants lacked any standing, are not the real parties in interest and were not proper parties to foreclose or enforce the original mortgage or note.

13.    The Plaintiff never received any default letter from the owner of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage. Rhode Island law and the terms of the mortgage mandate that prior to commencing a foreclosure by a default letter and power of sale, a party actually holds the note and the mortgage by way of transfer and/or assignment.

14.    The Defendants lack standing to foreclose, to assign the mortgage, to transfer the note or otherwise enforce the note or the mortgage.

15.    Protium does not have possession and ownership of the note and the mortgage and cannot show that the mortgage and note were transferred to it pursuant to law.

16.    Protium and BSI do not own the note or the mortgage nor have valid transfers and assignments of each occurred. There has not been a valid transfer of the note or mortgage to Protium.

17. The note was never endorsed by New Century. A copy of the note is attached as Exhibit H. This was provided by the attorneys for BSI pursuant to a response to a qualified written request on June 24, 2011.

18. As a result, the Defendants lack standing to enforce the note or the mortgage.

## COUNT II
## FACTS AND COMPLAINT

19. Paragraphs 1-18 are incorporated by reference.

20. On August 30, 2006, the Plaintiff executed a promissory note in favor of Aames in the amount of $261,250.00.

21. On even date, the Plaintiff executed a mortgage naming MERS as nominee for New Century as the Lender and Mortgagee, which also contained language relative to the statutory sale. A copy is attached as Exhibit A.

22. On the face of the Note, New Century is clearly designated as the Lender.

23. The Mortgage defines the Lender as New Century.

24. On June 8, 2010, an alleged assignment, which was legally ineffective and void, was allegedly made from a person known as Monica Sawatsky, purportedly on behalf of MERS as nominee for New Century. On information and belief, Monica Sawatsky is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution and has authority to execute said assignment of mortgage nor does it affix a corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24.

25. The Mortgage contains language that provides for the Statutory Power of Sale in the event of a default on the note by Plaintiff.

26. The mortgage does not state anywhere that the mortgagee or its assigns may invoke the Statutory Power of Sale.

27. RIGL 34-11-21 identifies the Mortgagee and the Lender as the same party.

28. The Lender never invoked the statutory of sale in this matter.

29. The Lender never mailed a notice of sale to the Borrower.

30. The Lender never published the notice of sale.

31. The alleged Foreclosure Sale is scheduled for March 18, 2013, allegedly noticed by the holder of the mortgage.

32. Since the notice of sale was defective, and any alleged sale is defective.

33. Neither Protium nor BSI is the lender in regard to this matter and, pursuant to RIGL 34-11-22, and lack statutory authority to foreclose.

34. Protium and BSI, neither of which is the Lender, wrongly published the notice of sale without contractual or statutory authority.

35. The actions taken by Protium and BSI are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because it is not now, nor has it ever been, the Lender as defined by both the note and the mortgage.

36. The foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

37. To foreclose pursuant to §34-11-22, the language of the Statute and the Note and Mortgage must be followed to the letter of the law.

38. The pending foreclosure is not in compliance with statutory mandates and is not in compliance with the plain language in the Note and Mortgage.

39. Monica Sawatsky had no standing or ability to assign the mortgage to Protium.

40. Protium and BSI lack standing to foreclose.

41. The Lender in this case was the only party, pursuant to the plain language of the mortgage.

42. The facts and documents relative to this matter establish that any foreclosure relative to this property must be done judicially and not by way of advertisement and auction due to failure to exactly follow the letter of the law.

43. This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

44. This is a justiciable controversy and is appropriate for Declaratory Judgment.

## COUNT III
## BREACH OF CONTRACT

45. Paragraphs 1-44 of Count I are incorporated by reference.

46. The Plaintiff never received any default letter from the owner of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage. Rhode Island law and the terms of the mortgage mandate that prior to commencing a foreclosure by a default letter and power of sale, a party actually own the note and the mortgage by way of transfer and/or assignment.

47. None of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared. The Owner of the Note and the Mortgage was required to specify:

    a. the default;

    b. the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

> c. that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

48. Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums

secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

49. Specifically the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

50. The Note was never endorsed, and therefore no party has standing to foreclose on the property without proper endorsement of the Note.

## COUNT IV
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692(f) (6)

51. Paragraphs 1-50 are incorporated by reference.

52. BSI is a debt collector as defined by 15 USC 1692 et seq. BSI, since March 15, 2012, has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

53. BSI has used the following unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

54. In violation of the FDCPA, representatives of BSI contacted the Plaintiff on numerous occasions since March 15, 2012 despite knowing that he was represented by an attorney.

55. BSI, on behalf of Protium, has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of his property even though Protium has no present right to possession of the property claimed as collateral through an enforceable security interest. Specifically, it committed the following violations in this regard:

> a. On about April 23, 2012, BSI sent a false Notice of Default and Intent to Accelerate to the Plaintiffs. A copy of this letter is attached as Exhibit I;

    b. On about August 7, 2012, BSI had caused to be sent, through its attorneys Bendett & McHugh, filed a false document indicating that BNYM owned the Plaintiff's mortgage and note. A copy of this letter has been attached as Exhibit J;

    c. On about November 29, 2012, BSI had caused to be sent, through its attorneys Bendett & McHugh, filed a false document indicating that BNYM owned the Plaintiff's mortgage and note. A copy of this letter has been attached as Exhibit K;

    d. On about January 25, 2013, BSI had caused to be sent, through its attorneys Bendett & McHugh, a false letter of intent to foreclose. A copy of this letter is attached as Exhibit L.

56. The facts alleged in this complaint establish that Protium does not have the present right to possession of the property claimed as collateral through an enforceable security interest.

57. BSI also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. BSI made false representations regarding the character and legal status of the debt, namely that it was owned by Protium.

58. Each action of BSI described above constitutes a separate violation of the FDCPA for which BSI is liable.

59. The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint.

60. The Plaintiff is entitled to statutory damages, actual damages, and attorney fees and costs for each violation of the FDCPA.

## COUNT II
## INJUNCTIVE RELIEF

61. Paragraphs 1-60 are incorporated by reference.

62. The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of Protium and BSI.

63. Protium and BSI have no interest in the property, the mortgage or note and, thus had no standing to foreclose upon the mortgage of the Plaintiff or to enforce the note or to assign the mortgage or transfer the note.

64. The Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants. The defendants have scheduled a foreclosure for March 18, 2013.

65. The Plaintiff has no other remedy at law but to seek the relief requested herein. Equity favors the Plaintiff as he has no adequate remedy at law.

**WHEREFORE**, the Plaintiff prays that this Court:

    A. Issue a Declaratory Judgment determining that the note and mortgage is not vested in Protium.

    B. Issue a Declaratory Judgment that the alleged assignment from MERS dated June 8, 2010 was invalid and void as a matter of law.

    C. Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and void and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

    D. Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, or collection action against the Plaintiff.

E. Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further or collection action against the Plaintiff.

F. Preliminarily and Permanently Restrain and Enjoin Protium, BSI, or MERS from executing any further assignments of the original mortgage or seeking to evict the Plaintiff.

G. Issue a Declaratory Judgment that the alleged assignment of the mortgage referenced in this Complaint was not made by a corporate officer with requisite corporate authority pursuant to law.

H. That the Plaintiff be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for wrongful foreclosure and for creating fraudulent documents.

I. Award the Plaintiff statutory damages, compensatory damages, punitive damages, attorney fees and costs, and interest for each separate violation of the FDCPA by BSI.

J. Award such other relief as this Court deems just and proper.

Walter Acevedo
By his Attorney

March 15, 2013

JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230